**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SIXTH DISTRICT OF THE
AFRICAN METHODIST
EPISCOPAL CHURCH, *et al.*,

       Plaintiffs,

v.

BRIAN KEMP, Governor of the State
of Georgia, in his official capacity, *et
al.*,

       Defendants.

CIVIL ACTION NO. 1:21-CV-01284-
JPB

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO
COUNTY DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ....................................................................................................... 3

    I.    PLAINTIFFS HAVE ALLEGED INJURY IN FACT ......................................... 4

        A.    Plaintiffs Have Alleged Organizational Injury ........................... 4

        B.    Plaintiffs Have Alleged Associational Injury ........................... 10

    II.    PLAINTIFFS' INJURIES ARE TRACEABLE TO AND REDRESSABLE BY COUNTY DEFENDANTS .................................................................... 11

        A.    County Defendants' Implementation and Enforcement of S.B. 202 Establishes Traceability .............................................. 12

        B.    The Relief Sought Against County Defendants Establishes Redressability .......................................................... 15

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*American Iron & Steel Institute v. OSHA*,
   182 F.3d 1261 (11th Cir. 1999) ..................................................................3

*Arcia v. Florida Secretary of State*,
   772 F.3d 1335 (11th Cir. 2014) ...............................................................4, 9

*Bischoff v. Osceola County*,
   222 F.3d 874 (11th Cir. 2000) .................................................................3, 8

*Black Voters Matter Fund v. Raffensperger*,
   478 F. Supp. 3d 1278 (N.D. Ga. 2020)......................................................11

*Clapper v. Amnesty International USA,*
   568 U.S. 398 (2013)....................................................................................6

*Common Cause Indiana v. Lawson*,
   937 F.3d 944 (7th Cir. 2019) ......................................................................8

*Common Cause/Georgia v. Billups*,
   554 F.3d 1340 (11th Cir. 2009) .....................................................4, 5, 9, 10

*Constitution Party of Pennsylvania v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) ......................................................................14

*Digital Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir. 2015) ....................................................................12

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
   438 U.S. 59 (1978)....................................................................................15

*Fair Fight Action, Inc. v. Raffensperger*,
   413 F. Supp. 3d 1251 (N.D. Ga. 2019)........................................................9

*Florida State Conference of the NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .......................................................4, 5, 7, 9

*Focus on the Family v. Pinellas Suncoast Transit Authority*,
  344 F.3d 1263 (11th Cir. 2003) ............................................................14

*Ford v. Strange*,
  580 F. App'x 701 (11th Cir. 2014) ..........................................................6

*Greater Birmingham Ministries v. Secretary of State of Alabama*,
  992 F.3d 1299 (11th Cir. 2021) ............................................................10

*Hunt v. Washington State Apple Advertising Commission*,
  432 U.S. 333 (1977)..................................................................... 4, 10

*I.L. v. Alabama*,
  739 F.3d 1273 (11th Cir. 2014) ............................................................16

*Jenkins v. McKeithen*,
  395 U.S. 411 (1969)................................................................... 16, 18

*Lewis v. Governor of Alabama*,
  944 F.3d 1287 (11th Cir. 2019) ......................................................11, 12

*Libertarian Party of Virginia v. Judd*,
  718 F.3d 308 (4th Cir. 2013) ..............................................................14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................3

*Made in the USA Foundation v. United States*,
  242 F.3d 1300 (11th Cir. 2001) .......................................................14, 16, 19

*Moody v. Holman*,
  887 F.3d 1281 (11th Cir. 2018) ............................................................15

*Region 8 Forest Service. Timber Purchasers Council v. Alcock*,
  993 F.2d 800 (11th Cir. 1993) ...............................................................3

*Reproductive Health Services v. Marshall*,
  268 F. Supp. 3d 1261 (M.D. Ala. 2017)............................................17, 19

*Scott v. Taylor*,
  405 F.3d 1251 (11th Cir. 2005) ............................................................13

*Spain v. Brown & Williamson Tobacco Corp.*,
  363 F.3d 1183 (11th Cir. 2004) ...............................................................................3

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*,
  446 U.S. 719 (1980)...............................................................................................13

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977) ...............................................................................................14

*Warth v. Seldin*,
  422 U.S. 490 (1975)..................................................................................................4

*Wilding v. DNC Services Corp.*,
  941 F.3d 1116 (11th Cir. 2019) .............................................................................15

*Wollschlaeger v. Governor of Florida*,
  848 F.3d 1293 (11th Cir. 2017) ..............................................................................6

## STATUTES

Official Code of Georgia Annotated (O.C.G.A.)
  § 21-2-30.................................................................................................................14
  § 21-2-33.1..............................................................................................................14
  § 21-2-33.2..............................................................................................................14
  § 21-2-70.................................................................................................................12
  § 21-2-91.................................................................................................................12
  § 21-2-265...............................................................................................................11
  § 21-2-381...............................................................................................................11
  § 21-2-382...........................................................................................................11, 12
  § 21-2-384...............................................................................................................11
  § 21-2-386...........................................................................................................11, 12
  § 21-2-405...............................................................................................................12
  § 21-2-413...........................................................................................................11, 12

**INTRODUCTION**

Plaintiffs are nine non-partisan, nonprofit organizations dedicated to protecting the right to vote, regardless of electoral outcomes. In this lawsuit, Plaintiffs challenge several provisions of Senate Bill 202 ("S.B. 202") that violate the United States Constitution and federal law. These provisions, individually and cumulatively, unduly burden the right to vote of all Georgians, and disproportionately harm members of historically disenfranchised communities, including voters of color and voters with disabilities. The County Defendants will implement and enforce these provisions in 11 counties where Plaintiffs operate, thus causing the injuries that Plaintiffs allege. As such, the County Defendants are proper defendants in this suit.

The First Amended Complaint ("FAC") methodically explains how implementation and enforcement of each of the challenged provisions will burden Georgia voters, as well as the actions that Plaintiffs will take to respond to those concrete harms. In their motion to dismiss, County Defendants mischaracterize these allegations, claiming that Plaintiffs lack standing because their alleged injuries are not sufficiently imminent. But S.B. 202 is the law, and the burden felt by Georgia voters, including Plaintiffs' members, and the actions that Plaintiffs have alleged

they will be forced to take in response to those harms, are exactly the type of injuries that the Eleventh Circuit has repeatedly held are sufficient to establish standing.

The County Defendants next suggest that they should not have been sued because they did not participate in enacting S.B. 202's burdensome provisions. This argument misunderstands the law and disregards the well-pled allegations in Plaintiffs' FAC. Both make clear that, because the County Defendants are responsible for enforcing and implementing the challenged provisions, Plaintiffs' injury is traceable to them and will be redressed by an injunction against them.

County Defendants further object to Plaintiffs' decision to sue some but not all county officials. But Article III's standing requirement is satisfied if the relief sought would reduce even part of Plaintiffs' injuries. Here, an injunction against the County Defendants would have a substantial likelihood of eliminating the burden on voters in 11 counties where Plaintiffs operate, thus establishing the requisite redressability. Moreover, Plaintiffs have also sued state election officials, and an injunction against them will necessarily apply statewide, thus eliminating any uniformity concerns.

Because both the State and County Defendants will play a role in causing Plaintiffs' injuries by implementing and enforcing the challenged provisions of S.B.

202, this Court should permit Plaintiffs' claims against both groups of Defendants to proceed.

## LEGAL STANDARD

On a motion to dismiss, the Court must "take the facts from the allegations in the complaint, assuming those allegations to be true." *Spain v. Brown & Williamson Tobacco Corp*., 363 F.3d 1183, 1186 (11th Cir. 2004). This standard applies to allegations related to plaintiffs' standing. *Bischoff v. Osceola Cty., Fla*., 222 F.3d 874, 878 (11th Cir. 2000); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) ("When the defendant challenges standing via a motion to dismiss, . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

## ARGUMENT

Article III's standing requirement has three elements: (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Each of the nine organizational Plaintiffs satisfies these elements, but if even *one* Plaintiff has standing, this Court need look no further. *Am. Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999).

## I.    Plaintiffs Have Alleged Injury In Fact

An organization can establish standing based on injuries to itself (i.e., organizational standing), *see Warth v. Seldin*, 422 U.S. 490, 511 (1975), or on behalf of its members (i.e., associational standing), *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Plaintiffs are required to establish only one or the other type of injury, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009), yet here Plaintiffs have standing under both approaches.

### A.    Plaintiffs Have Alleged Organizational Injury

Plaintiff organizations have alleged that S.B. 202's challenged provisions injure them by forcing them to divert resources away from other activities to assist Georgia voters who are harmed by those provisions.  The Eleventh Circuit has consistently held that organizations can establish standing by alleging this type of diversion of resources, including in pre-enforcement challenges to election laws like this one.  *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014); *Billups*, 554 F.3d at 1350-51; *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008).

Plaintiffs allege, for example, that the Sixth District of the African Methodist Episcopal Church ("AME Church") must divert limited resources from "voter engagement activities, such as transporting voters to the polls and public outreach

efforts to rural voters in Georgia, as well as . . . its food bank programs" to "assisting its members [with compliance with S.B. 202's requirements], [and] developing new training materials and public education documents." FAC ¶¶ 34-39. And Southern Christian Leadership Conference ("SCLC") must "divert time, money, and other resources" not only from its "voter-engagement activities, such as its voter registration and voter education efforts," but also from "advocacy, organizing, and conducting activities that address criminal justice reform, homelessness, and affordable housing." *Id.* ¶¶ 87, 88-92; *see also id.* ¶¶ 49-52 (Women Watch Afrika ("WWA")); *id.* ¶¶ 43-46 (Georgia Muslim Voter Project ("GAMVP")); *id.* ¶¶ 55-58 (Latin Community Fund Georgia ("LCF Georgia")); *id.* ¶¶ 62-66 (Delta Sigma Theta Sorority, Inc. ("the Deltas")); *id.* ¶ 69 (Georgia ADAPT) *id.* ¶¶ 75-78 (Georgia Advocacy Office ("GAO")); *id.* ¶ 84 (The Arc of the United States ("The Arc")). These are precisely the type of concrete allegations that the Eleventh Circuit has held establish cognizable organizational injury. *See, e.g., Browning*, 522 F.3d at 1165-66; *Billups*, 554 F.3d at 1350.[1]

---

[1] In addition, Plaintiffs AME Church, the Deltas, WWA, and The Arc have alleged that one of the challenged provisions—S.B. 202's ban on providing free support to voters waiting in line ("line relief ban")—will injure them *as organizations* by restricting their ability to continue engaging in this protected constitutional conduct. FAC ¶¶ 33, 41-42, 47-48, 57, 64, 67, 82, 90. In a challenge to "a prior restraint on speech" like this one, Plaintiffs can establish injury based on the law's "appli[cation]" to their intended activity. *CAMP Legal Def. Fund, Inc. v. City of*

### 1.    Plaintiffs' Injuries Are Imminent

The County Defendants argue that Plaintiffs' diversion-of-resources injuries are not sufficiently imminent because they "are based upon a long, winding, highly speculative narrative concerning actions they might have to take or resources they might have to expend at some point in the future."  Mot. 6.  This argument mischaracterizes both the law and the FAC.  There is nothing "speculative" about Plaintiffs' injuries: S.B. 202 has already been enacted, and County Defendants acknowledge that they have a nondiscretionary duty to enforce it.  Mot. 2.  The FAC includes detailed factual allegations showing how the challenged provisions of S.B. 202 will burden Plaintiffs' members and other Georgians' right to vote.  FAC ¶¶ 23-25, 275-319, 340-41.  That burden is a concrete injury as a matter of law.  *See Ford v. Strange*, 580 F. App'x 701, 708 (11th Cir. 2014).  Plaintiffs have clearly alleged that, to combat that concrete injury, they will be forced to divert resources from their existing core activities in detailed and specific ways.  *See supra* 4-5.  Each remaining step in the chain is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Attempting to manufacture uncertainty where none exists, the County Defendants point to Plaintiffs' use of the word "may" to describe one of the *many*

*Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006).

ways in which the diverted resources will be spent in combatting the effects of S.B. 202. Mot. 7. But County Defendants concede that numerous allegations in the FAC include no such qualifier, and that Plaintiff organizations assert steps that they *will take* in response to S.B. 202, regardless of any yet-to-occur independent action. *Id.*; *see also, e.g.*, FAC ¶ 36 ("Not only will AME Church have to educate its members about the new ID Requirements, it will also have to help members who do not have any S.B. 202-approved ID or documentation to obtain these materials . . . ."); *id.* ¶ 52 ("WWA will have to spend more . . . resources on existing training programs . . . which . . . will need to undergo substantial revisions in light of S.B. 202."). Even one of these allegations is sufficient to establish cognizable injury. And to the extent that County Defendants fault Plaintiffs for not quantifying the exact costs of these new efforts, *see* Mot. 8 (noting that Plaintiffs allege diversion of "unspecified resources or undetermined amounts of money"), such estimating is not required. *See Browning*, 552 F.3d at 1165 (explaining that "the fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury").

The County Defendants nonetheless ask this Court to disregard all Plaintiffs' allegations as based on "unproven fears" about S.B. 202's effects on Georgia voters. Mot. 7. Of course, Plaintiffs are seeking an opportunity to do just that—to prove the

burdensome and racially discriminatory effects they allege.  At the pleading stage, however, this Court must accept as true Plaintiffs' well-pled allegations of the burdens that the law imposes, as well as the steps that Plaintiffs will take in response, and assess whether those facts, if proved, would injure Plaintiffs.  *See Bischoff*, 222 F.3d at 878.  For the reasons stated, Plaintiffs have more than met that standard.

### 2.    *Plaintiffs' Injuries Are Cognizable*

County Defendants also claim that Plaintiffs' diversion-of-resources injuries are insufficient because they are "based solely on the baseline work they are already doing."  Mot. 8.  But that is simply not consistent with the allegations in the FAC. Plaintiffs have specifically identified the core activities that they will be forced to shift resources away *from*, as well as the *new* efforts that they will use those resources for in response to S.B. 202.  *See supra* 4-5.  To support this argument, County Defendants cite *Common Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019), but that case makes clear that Plaintiffs here *do* have standing.  As the court explained in *Lawson*, while an organization's injuries cannot be premised on "baseline work they are already doing," an organization clears that hurdle when it identifies "additional or new burdens … created by the law."  *Id.* at 955.  That is precisely what Plaintiffs have done here.  *See, e.g.*, FAC ¶ 63 ("Not only will the Deltas have to educate its members about the new ID Requirements, it will also have

to help members who do not have any S.B. 202-approved ID or documentation to obtain these materials for absentee ballot applications or for submission of the absentee ballot itself.").

County Defendants also wrongly assert that Plaintiffs' diversion-of-resources injuries are not cognizable because the efforts they will take to combat S.B. 202's effects "fall within the core mission of the organization[s]." Mot. 8.  That argument is squarely inconsistent with Eleventh Circuit precedent, which has repeatedly held that an organization has standing when it is "compel[led] to divert *more* resources to accomplishing its goals," even those consistent with its core mission.  *Browning*, 522 F.3d at 1165 (emphasis added).  For example, the Eleventh Circuit held that the organizational plaintiffs in *Arcia* had alleged actionable injury-in-fact when they had to divert resources to address the defendants' voter removal program, even though those organizations' "missions" already "include[d] voter registration and education," as well as "encouraging and safeguarding voter rights."  772 F.3d at 1341.  So too in *Billups*, where the court held that an organization involved in "voter registration, mobilization, and education" had standing to challenge voter ID requirements that required it to divert resources from related programming.  554 F.3d at 1350; *see also Browning*, 522 F.3d at 1166.

These cases leave no doubt that, as here, an "organization can establish standing by showing that it will need to divert resources from general voting initiatives . . . to address the impacts of election laws or policies." *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1266 (N.D. Ga. 2019).

## B.     Plaintiffs Have Alleged Associational Injury

Plaintiffs also and independently have "associational standing" to bring suit on behalf of their members.  A plaintiff organization has associational standing when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.  Plaintiffs satisfy each of these elements.  *First*, their members are personally subject to the very impediments these organizations are challenging.[2]  For instance, Plaintiffs' members are now precluded from using mobile voting, or drop boxes outside of approved hours, and will have to comply with the new ID requirements for absentee ballots. *See* FAC ¶¶ 31-32, 59-61, 68, 77, 83-86.  These additional burdens on the right to vote are a cognizable Article-III injury. *See Billups*, 554 F.3d at 1351-52. *Second*,

---

[2] As a designated protection and advocacy organization, GAO may assert standing on behalf of constituents with disabilities. *Doe v. Stincer*, 175 F. 3d 879 (11th Cir. 1999).

Plaintiffs' claims regarding S.B. 202's unjustified burdens on the right to vote are germane to the organizations' civic and voting rights missions. *See* FAC ¶¶ 33, 59, 67, 73, 82, 85-86. *Third*, neither the "constitutional and voting rights claims asserted, [n]or the declaratory or injunctive relief requested, require the participation of the individual members in this lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021).

The County Defendants do not contest this form of injury, which alone is sufficient to confer standing on Plaintiffs and defeat the motion to dismiss.

## II. Plaintiffs' Injuries Are Traceable To And Redressable By County Defendants

County election officials are responsible for managing the day-to-day aspects of Georgia elections, including registering, distributing, and tabulating absentee voters and ballots, *see, e.g.*, O.C.G.A. §§ 21-2-381, 21-2-384, 21-2-386, and managing polls, drop boxes, and other ballot-collection locations, *see, e.g., id.* §§ 21-2-265, 21-2-382, 21-2-413. As a result, the County Defendants bear frontline responsibility for implementing and enforcing the challenged provisions of S.B. 202. These actions by the County Defendants will cause Plaintiffs' injuries, and an order prohibiting them from enforcing these provisions will "significantly increase the likelihood" that those injuries do not occur. *Lewis v. Governor of Alabama*, 944

F.3d 1287, 1301 (11th Cir. 2019) (en banc). That is all that traceability and redressability require.

### A.    County Defendants' Implementation and Enforcement of S.B. 202 Establishes Traceability

Where an official participates in enforcing a challenged law, the law's effect on a plaintiff is traceable to the enforcing official, and a pre-enforcement suit against that official is appropriate. *See, e.g.*, *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1306 (N.D. Ga. 2020) (finding injuries traceable to state official to whom state law delegates relevant authority), *appeal pending* No. 20-13414 (11th Cir.). In other words, traceability is satisfied where "the named defendants . . . possess authority to enforce the complained-of provision." *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957-58 (8th Cir. 2015) (cited in *Lewis*, 944 F.3d at 1299). That is precisely the case here. County Defendants play an essential role in implementing and enforcing the challenged provisions of S.B. 202. For example, county election officials (or poll officers who answer to them, O.C.G.A. §§ 21-2-413, 21-2-405, 21-2-70, 21-2-91) will implement the law's new and burdensome requirements for requesting and returning absentee ballots, *id.* §§ 21-2-381, 21-2-386, the limits on access to drop boxes and other early voting mechanisms, *id.* §§ 21-2-381, 21-2-382, as well as the line relief ban and restrictions on in-county provisional ballots, *id.* § 21-2-386.

County Defendants, who are sued in their official capacities, do not dispute that they are charged with enforcing the challenged provisions of S.B. 202. Instead, they contend that because they did not participate in S.B. 202's enactment, Plaintiffs' injuries under the law cannot be attributed to them. *See* Mot. 9-10. This is not the law. A government official need not participate in a law's enactment to be a proper defendant in a suit challenging its implementation and enforcement. *See, e.g.*, *Jacobson*, 974 F.3d at 1253 (holding that injury from election-related legislation is traceable to the county Supervisors of Elections who implement the law but did not enact it).

County Defendants next contend that the FAC fails to connect them to Plaintiffs' alleged injuries from S.B. 202's implementation and enforcement. *See* Mot. 10, 12. That is also wrong. Georgia's election laws provide that, as alleged, each of the County Defendants is "responsible for the day-to-day operations of running elections" in their respective counties. FAC ¶¶ 95-133. And Plaintiffs have alleged in detail the specific ways in which those operations, carried out under S.B. 202, will burden Georgia voters and cause the injuries already described. *See id.* ¶¶ 275-319; *supra* 4-5, 10-11.

County Defendants also suggest that the traceability element of standing is not satisfied because Plaintiffs should have named *more* counties as defendants. But

standing requires that an injury be traceable to the named defendants, not that it be traceable *only* to those defendants. The requisite causation need only be enough to give the parties "a personal stake in the outcome of the controversy." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977)). It suffices for standing purposes that County Defendants are responsible "in part," even if not in whole, for Plaintiffs' alleged injuries. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013); *accord Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014) ("[T]here is room for concurrent causation in the analysis of standing.").

To be sure, State Defendants, whom Plaintiffs have also sued, have expansive statutory authority over county election officials, including the authority to overtake, remove, and replace county election officials in certain circumstances, S.B. 202 §§ 5, 6, 7; O.C.G.A. §§ 21-2-30, 21-2-33.1(f), 21-2-33.2. But Plaintiffs are entitled to sue any official involved in enforcing the challenged provisions, regardless of whether another official may exercise ultimate or singular control over those provisions. *See Made in the USA Found. v. United States,* 242 F.3d 1300, 1311 (11th Cir. 2001) ("a judicial order instructing subordinate . . . officials to cease their compliance with [challenged] provisions would suffice for standing purposes" even

though another individual "has the power, if he so chose, to undercut th[at] relief"). Traceability and redressability are thus satisfied for both the initial enforcement agent (here, the County Defendants) and officials with authority to control that agent (here, the State Defendants). *See Jacobson*, 974 F.3d at 1253 (explaining that traceability and redressability are satisfied by suing the officials responsible for implementing the challenged law and those with ultimate "control" or "authority" over its implementation).

## B. The Relief Sought Against County Defendants Establishes Redressability

"To have Article III standing, a plaintiff need not demonstrate anything 'more than . . . a substantial likelihood' of redressability." *Wilding v. DNC Serv. Corp.*, 941 F.3d 1116, 1126-27 (11th Cir. 2019) (quoting *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978)). That standard is met here. County Defendants bear responsibility for implementing and enforcing S.B. 202's unlawful restrictions in 11 counties where Plaintiffs operate. *See, e.g.*, FAC ¶¶ 32, 41, 53, 59, 60, 67.

County Defendants argue that an injunction against them would not redress Plaintiffs' injuries because it would not reach other county officials not named as defendants. Mot. 12-15. But Article III does not require that a plaintiff's lawsuit seek a remedy that would eliminate all of its injuries, or even the injury it invokes in

full. *See Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018) ("Article III also does not demand that the redress sought by a plaintiff be complete."). Rather, a "partial remedy [is] sufficient for redressability." *Made in the USA Found*, 242 F.3d at 1310; *accord I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014) (relief that would "redress (at least in part) the plaintiff's injury [was] enough for standing purposes"). Here, an injunction against County Defendants would, at a minimum, bar S.B. 202's enforcement in 11 counties where Plaintiffs operate and where their members and the communities they serve reside. Given that S.B. 202's challenged provisions will disproportionately burden such voters, *see* FAC ¶¶ 275-319, relief against County Defendants will significantly redress Plaintiffs' injuries. That is sufficient to confer standing.

Finally, County Defendants' concern about possible inconsistent application of the law in counties that are party to this lawsuit as compared to those that are not, *see* Mot. 14, is irrelevant to the question of standing, which focuses on whether relief against County Defendants would remedy Plaintiffs' injuries, not whether the relief sought is otherwise appropriate. *See Jenkins v. McKeithen*, 395 U.S. 411, 423 (1969) ("[T]he concept of standing focuses on the party seeking relief, rather than on the precise nature of the relief sought."). But in any event, Plaintiffs have also sued the responsible State officials and have sought an order declaring the challenged

provisions of S.B. 202 unlawful. Government officials have a duty to act in accordance with the law, and courts typically assume that they will do so. *See, e.g., Made in the USA Found. v. United States*, 242 F.3d 1300, 1309–10 (11th Cir. 2001) ("[W]e may assume it is substantially likely that . . . officials would abide by an [order of] the District Court, even though they would not be directly bound by such a determination."); *Reprod. Health Servs. v. Marshall*, 268 F. Supp. 3d 1261, 1294 (M.D. Ala. 2017). Thus, not only is redressability satisfied, but there are also no concerns regarding inconsistent application.

## CONCLUSION

For these reasons, Plaintiffs have standing to sue County Defendants for relief under each of their claims. County Defendants' motion to dismiss should be denied.

Respectfully submitted, this 28th day of June 2021.

/s/ *Nancy G. Abudu*

Nancy G. Abudu (Bar 001471)
*nancy.abudu@splcenter.org*
Pichaya Poy Winichakul (Bar 246858)
*poy.winichakul@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
P.O. Box 1287
Decatur, Georgia 30031-1287
Telephone: (404) 521-6700
Facsimile: (404) 221-5857


/s/ *Adam S. Sieff*

Adam S. Sieff (pro hac vice)
*adamsieff@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Facsimile:  (213) 633-6899


David M. Gossett (pro hac vice)
*davidgossett@dwt.com*
Courtney T. DeThomas (pro hac vice)
*courtneydethomas@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C.  20005-7048
Telephone: (202) 973-4288
Facsimile:  (202) 973-4499


Kate Kennedy (pro hac vice)
*katekennedy@dwt.com*
Matthew Jedreski (pro hac vice)
*mjedreski@dwt.com*
Grace Thompson (pro hac vice)

/s/ *Sean J. Young*

Sean J. Young (Bar 790399)
*syoung@acluga.org*
Rahul Garabadu (Bar 553777)
*rgarabadu@acluga.org*
ACLU FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060


/s/ *Sophia Lin Lakin*

Sophia Lin Lakin (pro hac vice)
*slakin@aclu.org*
Theresa J. Lee (pro hac vice)
*tlee@aclu.org*
Dale E. Ho (pro hac vice)
*dho@aclu.org*
Ihaab Syed (pro hac vice)
*isyed@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539


Susan P. Mizner (pro hac vice)
*smizner@aclu.org*
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781


Brian Dimmick (pro hac vice)
*bdimmick@aclu.org*

*gracethompson@dwt.com*
Jordan Harris (pro hac vice)
*jordanharris@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

*Attorneys for Plaintiffs*
*Georgia Muslim Voter Project, Women*
*Watch Afrika, Latino Community Fund*
*Georgia, and The Arc of the United*
*States*

ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

/s/ *Leah C.* Aden
Leah C. Aden (pro hac vice)
*laden@naacpldf.org*
John S. Cusick (pro hac vice)
*jcusick@naacpldf.org*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

/s/ *Debo P. Adegbile*
Debo P. Adegbile (pro hac vice)
*debo.adegbile@wilmerhale.com*
Ilya Feldsherov (pro hac vice)
*ilya.feldsherov@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE  AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese (pro hac vice)
*george.varghese@wilmerhale.com*
Stephanie Lin (pro hac vice)
*stephanie.lin@wilmerhale.com*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

Facsimile: (617) 526-5000

Tania Faransso (pro hac vice)
*tania.faransso@wilmerhale.com*
Webb Lyons (pro hac vice)
*webb.lyons@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce (pro hac vice)
*nana.wilberforce@wilmerhale.com*
WILMER CUTLER PICKERING
 HALE  AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Plaintiffs*
*Sixth District of the African Methodist*
*Episcopal Church, Delta Sigma Theta*
*Sorority, Georgia ADAPT, Georgia Advocacy*
*Office, and Southern Christian Leadership*
*Conference*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated:  June 28, 2021                    /s/ *Rahul Garabadu*
                                         Rahul Garabadu


                                         *Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: June 28, 2021                     /s/ *Rahul Garabadu*
                                         Rahul Garabadu


                                         *Counsel for Plaintiffs*