# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH; et al., *Plaintiffs*, v. Brian KEMP, in his official capacity as Governor of the State of Georgia; et al., *Defendants*, REPUBLICAN NATIONAL COMMITTEE; et al., *Intervenor-Defendants*. | No. 1:21-cv-1284-JPB |

## INTERVENORS' REPLY IN SUPPORT
## OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

Introduction ............................................................................................................1
Argument ...............................................................................................................1
    I.    There is no constitutional right to vote absentee. ..........................1
    II.   Plaintiffs plead no plausible violation of the ADA. ........................6
Conclusion............................................................................................................10
Certificate of Compliance.....................................................................................11
Certificate of Service ............................................................................................11

## INTRODUCTION

To avoid duplicative briefing, Intervenors will limit this reply to Plaintiffs' ADA claim and their claims alleging a constitutional right to vote absentee. Replies are not "necessary" in this Court, L.R. 7.1(C), and Plaintiffs' other claims are addressed in Intervenors' opening briefs, the relevant parts of the State's briefs, and Intervenors' replies in the related cases. *See, e.g.*, Intvrs.' Reply in *AAAJ* (addressing *Anderson-Burdick*); Intvrs.' Reply in *NAACP* (addressing §2 and intentional discrimination); Intvrs.' Reply in *NGP* (addressing the First Amendment). Intervenors join and incorporate all those arguments. As for the ADA and absentee voting, Plaintiffs' attempts to rehabilitate the legal defects with these claims are unpersuasive. This Court should dismiss Counts III and V with prejudice (as well as Count I in *NGP*, Count III in *AAAJ*, Count III in *NAACP*, and Counts IV and VI in *CBC*).

## ARGUMENT

Despite decades-old precedent denying the existence of a right to vote absentee, Plaintiffs insist that their absentee-heavy allegations plausibly plead a violation of the constitutional right to vote. And despite their failure to tie anything in SB 202 to unlawful burdens on disabled voters, Plaintiffs insist that they have plausibly pleaded a violation of the ADA. Plaintiffs err on both counts.

### I. There is no constitutional right to vote absentee.

Plaintiffs do not dispute that, until the 1980s, the States generally provided "only one method of voting: in person on election day." Mot. (Doc.

1

100-1) 3. But if Plaintiffs are right that mere *regulations* of absentee voting put unconstitutional "pressure" on in-person voting, Opp. (Doc. 101) 4, then the *nonexistence* of absentee voting for most voters until the 1980s means that every State was violating the Constitution for over a century. In *McDonald*, the Supreme Court explained why that isn't true: Absentee voting is an innovation that "make[s] voting more available," but limits on it do not implicate "the fundamental right to vote" when in-person voting remains available. *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807-08 & nn.6-7 (1969). Plaintiffs do not plausibly allege that, after SB 202, voters have *no* way to vote. Their constitutional right-to-vote claim thus fails.

Contra Plaintiffs, *McDonald* is not an irrelevant case that only "involved an equal protection claim." Opp. 5. To determine what "standard" governed the plaintiffs' equal-protection claim, the *McDonald* Court had to determine whether the case implicated the "fundamental right" to vote. 394 U.S. at 806-07. It concluded that "the fundamental right to vote" was not implicated because there is no "right to receive absentee ballots" (and there was no evidence that the State had prohibited in-person voting). *Id.* at 807-08 & n.6. This was a *holding*. As Judge Lagoa recently observed, *McDonald* "unambiguously held" that the right to vote absentee is not a fundamental right. *New Ga. Proj. v. Raffensperger*, 976 F.3d 1278, 1288 (11th Cir. 2020) (Lagoa, J., concurring).

Nor is *McDonald* an outdated case that has been superseded by *Anderson-Burdick*. *Cf.* Opp. 5. Even if subsequent cases had "changed the law" or "[could not] be squared with" *McDonald*, this Court would be bound to follow

2

*McDonald* because the Supreme Court has never overruled it. *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1264 (11th Cir. 2012). But regardless, subsequent cases have not undermined *McDonald* at all. "The Court has reiterated [*McDonald*'s] holding several times," *Tully v. Okeson*, 977 F.3d 608, 613 n.3 (7th Cir. 2020), and Intervenors are aware of no decision where the Supreme Court subjected a regulation of absentee voting to *Anderson-Burdick* scrutiny. Nor do Plaintiffs cite one. *McDonald*'s holding that burdens on absentee voting are not burdens on the constitutional right to vote fits comfortably within the *Anderson-Burdick* framework. That is why many courts have followed *McDonald*'s holding in the *Anderson-Burdick* era. *See Tully*, 977 F.3d at 613-14 & n.3 (collecting cases). In short, "*McDonald* lives." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 405-06 (5th Cir. 2020).

Plaintiffs suggest that, whatever other courts might have done, the Eleventh Circuit treats absentee voting as a constitutional right. *See* Opp. 5 n.1. They cite two cases: *Democratic Executive Comm. of Florida v. Lee*, 915 F.3d 1312, 1318-19 (11th Cir. 2019); and *Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005)). Neither case supports that proposition.

*Charles H. Wesley* addressed Article III standing to bring a statutory claim under the National Voter Registration Act. *See* 408 F.3d at 1352. It did not address the merits of a constitutional right-to-vote claim.

*Democratic Executive Committee* resolved nothing either. For one thing, that decision is nonprecedential because it merely denied an emergency motion

3

for a stay. 915 F.3d at 1315. As the Eleventh Circuit later explained, its opinion "*cannot* spawn binding legal consequences regarding the merits" given its "necessarily tentative and preliminary nature." *Democratic Exec. Comm. of Fla. v. NRSC*, 950 F.3d 790, 795 (11th Cir. 2020). For another thing, *Democratic Executive Committee* was a *post*-election case that challenged the process for counting ballots that were *already voted*. The case did not involve, the Republican Party did not raise, and the Eleventh Circuit did not resolve whether regulations of absentee voting implicate the constitutional right to vote. When the Republican Party did raise that issue in *New Georgia Project*, the Eleventh Circuit adopted its argument verbatim. *See* Mot. 5. This Court should follow the reasoning in *New Georgia Project*, not the silence in *Democratic Executive Committee*.

As a final rejoinder, Plaintiffs insist that *McDonald* and the cases that follow it are fact-intensive decisions about "the record"—that those plaintiffs simply failed to *prove* that regulations of absentee voting were burdensome. Opp. 5-6. Not so. Those decisions state, *as a matter of law*, that "the fundamental right to vote does not extend to a claimed right to cast an absentee ballot by mail." *Tully*, 977 F.3d at 611; *accord New Ga. Proj.*, 976 F.3d at 1281 (holding that a regulation of absentee voting did not "*implicate* the right to vote *at all*" (emphases added)); *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 232 (5th Cir. 2020) ("no right" to vote absentee); *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020) ("there is no constitutional right to an absentee ballot"). As the

Seventh Circuit put it, the Constitution would not be offended even if absentee voting "disappeared tomorrow." *Tully*, 977 F.3d at 614.

When these decisions consulted "the record," they simply checked to see that the State had not "prevented the plaintiffs from voting by all other means." *Tex. Democratic Party*, 961 F.3d at 404; *e.g.*, *Tully*, 977 F.3d at 613-14. In *McDonald*, for example, the Court held that the inmates had no right to vote absentee because the State "might" let them vote at the jail, drive them to the polls, or grant them temporary bail. 394 U.S. at 808 n.6; *see O'Brien v. Skinner*, 414 U.S. 524, 529 (1974) (explaining that the "failure of proof" in *McDonald* was the plaintiffs' failure to rule out "the possibility that the State might furnish some other alternative means of voting").

The caselaw following *McDonald* "drives the point home." *Tex. Democratic Party*, 961 F.3d at 405. In several cases, the Court held that inmates could bring a constitutional claim precisely because they alleged that they were "completely denied the ballot." *O'Brien*, 414 U.S. at 530; *see Goosby v. Osser*, 409 U.S. 512, 521-22 (1973) (finding a constitutional violation because the State "absolutely prohibits [inmates] from voting … either by absentee ballot, or by personal or proxy appearance …, or generally by any means"); *cf. Am. Party of Tex. v. White*, 415 U.S. 767, 795 (1974) (noting that the constitutional question is whether a State has denied absentee voting "without affording a comparable alternative means to vote").

In Georgia, by contrast, no one is "absolutely prohibited" from voting. *McDonald*, 394 U.S. at 809, 808 n.7. Georgians who cannot vote absentee can

5

still vote "early in-person" or "on Election Day." *New Ga. Proj.*, 976 F.3d at 1281. Plaintiffs do not allege otherwise. While they claim that reductions in absentee voting put "pressure on polling sites *on* Election Day," Opp. 4, this theory has several problems. First, it is not alleged in the amended complaint, which merely references the existence of "long lines." Am. Compl. ¶¶247, 307-09. Second, this theory is implausible. It ignores Georgia's generous period of early voting, and it supposes that Georgia has *eliminated* absentee voting when, in reality, SB 202 imposes only modest regulations on it. Third, Plaintiffs' "pressure" theory is irrelevant under the governing law. Even if SB 202 somehow led to a net increase in the length of lines, Plaintiffs do not plausibly allege that it makes lines so long that in-person voting is effectively "'prohibited.'" *Tex. Democratic Party*, 961 F.3d at 404.

Georgia remains, after all, in the top tier of all States for ease of voting. *See How Easy Is It to Vote Early in Your State?*, Ctr. for Election Innovation & Rsch. (Apr. 12, 2021), bit.ly/3xxA56v.[*] SB 202 at most makes modest adjustments to Georgia's generous voting procedures. Plaintiffs' constitutional right-to-vote claims should be dismissed.

## II.  Plaintiffs plead no plausible violation of the ADA.

The main problem with Plaintiffs' ADA claim is straightforward: Nothing in their amended complaint draws a plausible connection between SB 202's

---

[*] As the cited article explains, Georgia allows *all* voters to vote by mail or early in person, while 15 other States do not provide one or both of those options. This Court can take judicial notice of the laws in other States. *J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962).

*actual provisions* and any unlawful burdens on disabled people. *See* Mot. 17-18. Plaintiffs' only response to this point is a long, unexplained string cite to their amended complaint. *See* Opp. 21. That's insufficient, especially since the cited paragraphs don't fill in the gaps. Disabled voters face many unique challenges, no doubt, but many of those challenges preexist SB 202. Plaintiffs must point to something *in SB 202* that unlawfully discriminates against disabled voters. They fail.

No one denies that waiting in line could present challenges for certain disabled voters. *E.g.*, Am. Compl. ¶¶13, 24, 25, 189, 286, 298, 328. But Georgia allows disabled voters to skip the line. O.C.G.A. §21-2-409.1; §21-2-385.1. SB 202 also does not prevent other assistance or accommodations at the polls, and Georgia law provides many accommodations already. *Cf.* §21-2-409 (allowing disabled voters to receive assistance in the voting booth); §21-2-379.21 (requiring electronic ballot markers be accessible to disabled voters); §21-2-452 (requiring paper ballots and privacy accommodations for disabled voters who cannot vote electronically); §21-2-451(b) (requiring accommodations for disabled voters who cannot sign their name); §21-2-431(b) (same). In fact, SB 202 *requires* polling places to take measures to reduce long lines. §21-2-263(b). And Plaintiffs never explain why disabled voters need *third parties* to personally provide them food or drink at the polls, instead of bringing it themselves or using what's already provided.

Nor does anyone deny that certain disabled voters might prefer to vote absentee. *E.g.*, Am. Compl. ¶¶14, 24, 190, 193, 281, 286, 289. But Georgia

7

allows disabled voter to use others to help them register, apply for a mail ballot, assemble the necessary documents, prepare their ballot, and mail or drop off their ballot. O.C.G.A. §21-2-220(f); §21-2-381(a)(1); §21-2-385(a)-(b). SB 202 also *requires* dropboxes, and Plaintiffs identify no plausible scenario where it's easier for a disabled voter to use a dropbox instead of a mailbox. Plaintiffs likewise do not attempt to explain how Georgia's deadline for submitting mail-ballot applications burdens disabled voters. *Cf.* §21-2-381(a)(1)(G) (excusing disabled voters from the requirement that they submit a new mail-ballot application for each election).

Plaintiffs are wrong to suggest that, for purposes of the ADA, "absentee voting, drop box voting, and in-person voting are *each* distinct programs." Opp. 21 (citing *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503-05 (4th Cir. 2016)). Not even the Fourth Circuit's decision in *Lamone* went that far; it considered the State's "absentee voting *program*" as a whole, with all its various methods for returning absentee ballots. 813 F.3d at 505, 498-99 (emphasis added). If this Court follows *Lamone*, it should consider Georgia's absentee voting program as a whole and its in-person voting program as a whole. Neither unduly burdens disabled voters, as explained above.

But this Court should not follow *Lamone*. With possible exceptions not raised here, the caselaw and regulations interpreting the ADA instruct courts to evaluate a jurisdiction's "entire program of voting." *Kerrigan v. Phil. Bd. of Election*, 2008 WL 3562521, at *11-13 (E.D. Pa. Aug. 14) (citing 28 C.F.R. §35.150 and several cases). While Plaintiffs' view finds some support in the

8

district court's decision in *People First of Alabama v. Merrill*, Plaintiffs neglect to mention that the Supreme Court *stayed* that decision twice. *See* 141 S. Ct. 190 (2020); 141 S. Ct. 25 (2020). The Court apparently did not find Plaintiffs' interpretation of the ADA, which was echoed in the dissent, persuasive. *See* 141 S. Ct. at 27 (Sotomayor, J., dissenting from grant of stay). Nor does that interpretation match the total denials of voting that the ADA was "designed to address." *Tennessee v. Lane*, 541 U.S. 509, 524 (2004); *see id.* at 524-25 & n.13.

At a minimum, Plaintiffs' ADA claim should be dismissed because it fails to meet the standard for a facial challenge. Plaintiffs do not dispute that they lack standing to challenge SB 202 as applied, or that their allegations do not plausibly satisfy the "'no set of circumstances'" test for facial challenges. *See* Mot. 17-18 (quoting *Oconomowoc Residential Programs, Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 951 (E.D. Wis. 1998)). Plaintiffs instead deny that the distinction between as-applied and facial claims applies here. Opp. 20. Plaintiffs are mistaken.

When Plaintiffs say that SB 202 violates the ADA, they mean that the ADA *preempts* SB 202; in other words, they mean that SB 202 is unconstitutional under the Supremacy Clause. Courts routinely apply the no-set-of-circumstances test to such claims. *See, e.g.*, *PhRMA v. Concannon*, 249 F.3d 66, 77-79 (1st Cir. 2001) (federal Medicaid statute did not facially preempt Maine law), *aff'd*, 538 U.S. 644 (2003); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 636-43 (10th Cir. 1998) (federal Colorado Enabling Act did not facially preempt state constitutional amendment). The court in *Oconomowoc* was

9

making this same point. *Cf.* Opp. 20. The court understood the plaintiff to be arguing that certain laws were "'facially'" invalid because they were "'preempted by'" the ADA. *Oconomowoc*, 23 F. Supp. 2d at 951. Because the plaintiff failed to show that "'no set of circumstances exists under which the [state laws] would be valid,'" the court rejected the facial ADA claim. *Id.* This Court should do the same.

## CONCLUSION

This Court should dismiss Plaintiffs' amended complaint with prejudice.

Respectfully submitted,

Dated: August 9, 2021 /s/ *Tyler R. Green*

| | |
|---|---|
| John E. Hall, Jr. | Tyler R. Green (*pro hac vice*) |
|   Georgia Bar No. 319090 | Cameron T. Norris (*pro hac vice*) |
| William Bradley Carver, Sr. | Steven C. Begakis (*pro hac vice*) |
|   Georgia Bar No. 115529 | CONSOVOY MCCARTHY PLLC |
| W. Dowdy White | 1600 Wilson Blvd., Ste. 700 |
|   Georgia Bar No. 320879 | Arlington, VA 22209 |
| HALL BOOTH SMITH, P.C. | (703) 243-9423 |
| 191 Peachtree St. NE, Ste. 2900 | tyler@consovoymccarthy.com |
| Atlanta, GA 30303 | cam@consovoymccarthy.com |
| (404) 954-6967 | steven@consovoymccarthy.com |

*Counsel for Intervenor-Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *Tyler R. Green*

## CERTIFICATE OF SERVICE

On August 9, 2021, I e-filed this document on ECF, which will serve everyone requiring service.

/s/ *Tyler R. Green*