IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| *IN RE* GEORGIA SENATE BILL 202 | Master Case No. 1:21-MI-55555-JPB |

## <u>STATEMENT OF INTEREST OF THE UNITED STATES</u>

Under Title II of the Americans with Disabilities Act ("ADA" or "Title II"), public entities must provide voters with disabilities an equal opportunity, not just some opportunity, to vote.  The United States respectfully submits this Statement of Interest to address the proper framework for evaluating claims to enforce the equal opportunity and reasonable modification requirements of Title II to voting programs. The correct analysis is whether voters with disabilities have an equal opportunity to vote by a particular method.  For example, voters with disabilities should have access to the benefits of both absentee and in-person voting that is equal to the benefits afforded to people without disabilities. In addition, to avoid discrimination, a public entity must reasonably modify its policies, procedures, or practices when necessary to avoid disability discrimination, unless it can show that the modifications would fundamentally alter the nature of the service, program, or activity.

1

Secretary Raffensperger and other state officials and the Republican National Committee and other party organizations (collectively, "Movants") have moved for summary judgment on Plaintiffs' claims.  Defs.' and Intervenors' Mots. Summ. J., ECF No. 757, 758, 760, 761, 762, 763, 764.  In their motions, Movants misapply the requirements of the ADA, relying heavily on a legal framework that applies to the physical accessibility of existing facilities and has no relevance to the claims at issue here.  The United States respectfully submits this Statement of Interest under 28 U.S.C. § 517[1] to clarify the proper legal framework for addressing the equal opportunity and reasonable modification ADA claims raised in the case. [2]

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court.  28 U.S.C. § 517.  The United States is also a Plaintiff in this consolidated action, alleging that SB 202 violates Section 2 of the Voting Rights Act.  The United States' suit was consolidated with the other five cases.  Order Consolidating Cases, *In re Senate Bill 202*, 1:21-mi-55555, ECF No. 1 (N.D. Ga. Dec. 23, 2021).  The United States' complaint does not include claims alleging that SB 202 violates the ADA or Section 504 of the Rehabilitation Act of 1973 ("Section 504").  *See United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. filed June 25, 2021).  This Statement is intended to aid the Court in evaluating Movants' motions for summary judgment as to Plaintiffs' ADA and Section 504 claims.  It does not take a position on the merits of Plaintiffs' ADA or Section 504 claims.

[2] Plaintiffs also allege violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Because the ADA and the Rehabilitation Act involve the same substantive standards and are generally subject to the same analysis, *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019), this Statement addresses only the ADA claims.

## INTEREST OF THE UNITED STATES

This litigation implicates the proper interpretation and application of Title II of the ADA.  The Department of Justice is charged with implementing Title II by promulgating regulations, issuing technical assistance, and bringing suits in federal court to enforce the statute.  42 U.S.C. §§ 12133-12134, 12206; 28 C.F.R. pt. 35. The United States therefore has a strong interest in the proper and uniform application of Title II and in furthering Congress's intent to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities" and reserve a "central role" for the federal government in enforcing the ADA's standards.  42 U.S.C. § 12101(b)(2)-(3).

28 U.S.C. § 517 states that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."  Congress vested the Department of Justice ("Department") with authority to enforce and implement Title II of the ADA.

## STATUTORY BACKGROUND

Under Title II of the ADA, a public entity may not "den[y] the benefits of [its] services, programs, or activities" to a qualified individual with a disability or subject any such individual to discrimination.  42 U.S.C. § 12132.  Title II's broad scope

includes voting programs and activities. *See, e.g.*, *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107 (11th Cir. 2011) ("As a public program, disabled citizens must be able to participate in the County's voting program."); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) ("Voting is a quintessential public activity.").

The Justice Department has promulgated a regulation to implement Title II.[3] *See* 28 C.F.R. pt. 35. The regulation prohibits public entities from: (1) affording an individual with a disability an opportunity to participate in an aid, benefit, or service "that is not equal to that afforded others"; (2) providing "an aid, benefit, or service that is not as effective in affording equal opportunity," *id.* § 35.130(b)(1)(ii)-(iii); (3) using "criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination," *id.* § 35.130(b)(3)(i); or (4) imposing or applying "eligibility criteria that screen out or tend to screen out an individual with a disability," *id.* § 35.130(b)(8). The regulation also imposes an affirmative obligation on public entities to "make reasonable modifications in policies, practices, or procedures" when necessary to avoid discrimination. *Id.* § 35.130(b)(7)(i).

---

[3] The Title II regulation is "entitled to controlling weight." *Schotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1179 (11th Cir. 2003).

4

The Title II regulation further has specific requirements governing the built environment. Public entities are required to make their "facilities" (all or any portion of buildings and structures) physically accessible, so that their programs and activities, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities. *Id.* §§ 35.104, 35.149, 35.150, 35.151.[4]

To prove a violation of Title II, plaintiffs must show that they: (1) have a disability; (2) are otherwise qualified to receive the benefits of the defendant's service, program, or activity; and (3) were denied the opportunity to participate in or benefit from the service, program, activity, or were otherwise discriminated against, on the basis of their disability. 42 U.S.C. § 12132; *see Harris*, 647 F.3d at 1101.

## DISCUSSION

### I.   Title II's Equal Opportunity Requirements Prohibit More Than Outright Exclusion from a Program.

Movants argue that, because Georgia offers multiple ways for voters with disabilities to vote, including through in-person and absentee voting, Plaintiffs

---

[4] In addition, public entities may not, in determining a facility's site or location, make selections that have the effect of excluding people with disabilities, denying them the benefits of, or otherwise subjecting them to discrimination. *See* 28 C.F.R. § 35.130(b)(4).

cannot show that voters with disabilities lack "meaningful access" to Georgia's entire voting program.[5]   Movants' arguments misapprehend the applicable legal framework in three distinct ways.

First, Movants largely rest their analysis on Title II's program accessibility requirements, 28 C.F.R. § 35.150.   *E.g.*, ECF No. 763 at 75; ECF No. 757-1 at 23-24; ECF No. 758-1 at 23-24; ECF No. 760-1 at 33, 35-36. Because Title II's program accessibility requirements apply only to the accessibility and usability of public entities' "existing facilities," 28 C.F.R. § 35.150, they are inapplicable to Plaintiffs' claim.[6]  *See Lamone*, 813 F.3d at 504 ("This regulation is targeted principally at physical accessibility[.]"); *Harris*, 647 F.3d at 1101-02 (interpreting the meaning of

_____

[5] Movants use the term "meaningful access" to describe the legal standard under Title II.  *E.g.*, ECF No. 757-1 at 25; ECF No. 761 at 30; ECF No. 758-1 at 23. This term does not originate in either Section 504 or Title II, but rather, comes from the Supreme Court's decision in *Alexander v. Choate*, in which the Court interpreted Section 504's requirements.  469 U.S. 287, 290-303 (1985).  Although some courts use the term "meaningful access" to describe the legal standard under Title II, the accurate term to describe the standard is set forth in the Title regulation, which requires that a public entity provide "equal opportunity" to benefits, programs, and services.  28 C.F.R. § 35.130(b)(1)(ii)-(iii).

[6] Intervenors cite *Brnovich v. Dem. Nat'l Comm.*, 141 S. Ct. 2321, 2339 (2021) for the proposition that courts must consider the opportunities provided under the State's entire voting system to assess the burden of a challenged proposition.  ECF No. 760 at 32.  This citation is inapposite.  *Brnovich* construed the Voting Rights Act and is unrelated to the ADA's legal standards.  *See Brnovich*, 141 S. Ct. at 2336.

"facility" under the program accessibility regulation).  In the voting context, the program access provisions require polling places to be physically accessible.  *E.g.*, *Kerrigan v. Philadelphia Bd. of Election*, No. 07-687, 2008 WL 3562521, at *13, *18 (E.D. Pa. Aug. 14, 2008).  But polling place accessibility is not at issue here, and Movants' arguments based on these requirements are inapposite.

Second, Movants contend that making voting more difficult for people with disabilities does not deny "meaningful access." *E.g.*, ECF No. 763 at 61-62, 74; ECF No. 757-1 at 24-25.  Again, Movants misapprehend what the ADA requires.  The Title II regulation prohibits public entities from "deny[ing]" people with disabilities an equal opportunity to participate in services, and it also prohibits public entities from providing unequal or less effective services to people with disabilities.  28 C.F.R. § 35.130(b)(1)(i)-(iii).  Under these regulations, making it more difficult for people with disabilities than without disabilities to vote can violate the ADA.

In *Lamone*, the Fourth Circuit examined how the ADA applies in this context. The court examined whether Maryland's prohibition against the use of an online ballot marking tool failed to provide voters with disabilities an opportunity to vote that was equal to the opportunity provided to other voters.  *Lamone*, 813 F.3d at 502. The court focused on the fact that voters without disabilities had the benefit of voting without assistance while voters with disabilities required assistance.  The court found that this "sharp disparity" in Maryland's absentee voting program "makes

obvious that defendants have provided 'an aid, benefit, or service [to disabled individuals] that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'" *Id.* at 506 (citing 28 C.F.R. § 35.130(b)(1)(iii)).  The court elaborated that "by effectively requiring disabled individuals to rely on the assistance of others to vote absentee, defendants have not provided plaintiffs with meaningful access to Maryland's absentee voting program." *Id.* at 507.  As the Fourth Circuit found and the plain language of the regulation demands, denying a benefit to people with disabilities that is provided to people without disabilities can violate the ADA.  Thus, Movants' blanket statement that difficulty in voting does not violate Title II is erroneous.

And third, Movants argue that the Court should evaluate Georgia's voting program as a whole.  *E.g.*, ECF No. 763 at 74; ECF No. 757-1 at 24-25.  But that framework would read out protections from the plain text of Title II, which prohibits public entities from denying the *benefits* of programs on the basis of disability.  Absentee and in-person voting are distinct benefits, and people with disabilities are entitled to equal access to both under Title II.  To construe Title II as prohibiting only total exclusion from all forms of voting would render Title II's antidiscrimination prohibitions hollow.  *See Disabled in Action v. Bd. of Elections in City of N.Y.C.*, 752 F.3d 189, 199 (2d Cir. 2014) ("[T]o assume the benefit is … merely the opportunity

8

to vote at some time and in some way" would render the equal opportunity mandate "meaningless."); c*f. Alexander*, 469 U.S. at 301 n.21 ("Antidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit.'").

Thus, in evaluating a Title II claim alleging that a state denies voters with disabilities an equal opportunity to vote using a particular method, courts have considered whether voters with disabilities have an equal opportunity to vote by using the same method as voters without disabilities. *E.g.*, *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1158 (N.D. Ala. 2020) (rejecting defendant's arguments that the court consider Alabama's voting program as a whole and that voters fearing COVID-19 exposure from in-person voting were not excluded because they could vote absentee), appeal dismissed No. 20-13695-GG, 2020 WL 7038817 (11th Cir. Nov. 13, 2020), appeal dismissed No. 20-13695-GG, 2020 WL 7028611 (11th Cir. Nov. 16, 2020); *Am. Council of the Blind of Ind. v. Ind. Election Comm'n*, 1:20-cv-03118, 2022 WL 702257, at *8 (S.D. Ind. Mar. 9, 2022) ("The relevant program or benefit is absentee voting" rather than the voting program as a whole); *cf. Merrill v. People First of Ala.*, 141 S. Ct. 25, 26-27 (2020) (Sotomayor, J., dissenting from grant of stay of permanent injunction) ("Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both."). In *Lamone*, as here, defendants argued that "all aspects of a state's voting

program must be viewed together" in a Title II analysis. *Lamone*, 813 F.3d at 505. The court rejected this argument, instead holding, consistent with other courts, that the appropriate object of analysis was the absentee voting opportunity and not the program as a whole. *Id*.

## II.     Title II's Reasonable Modification and Equal Opportunity Requirements Are Distinct and Require Separate Analysis.

Movants argue that Georgia does not need to modify its voting program because voters with disabilities have opportunities to vote in multiple ways, either in-person or absentee, and difficulty in accessing a voting method does not by itself establish lack of meaningful access. *E.g.*, ECF No. 763 at 64; ECF No. 757-1 at 23-24; ECF No. 758-1 at 24-25. Under Movants' analysis, Title II only requires reasonable modifications to address outright exclusion from any method of voting.

Movants' arguments fail to address that public entities must both ensure that they provide equal access for people with disabilities to the benefits of their voting program, 28 C.F.R. § 35.130(b)(1)(i)-(iii), *and* make reasonable modifications to avoid discrimination unless the entities can show that the modifications would fundamentally alter the nature of the service, program, or activity, *id.* § 35.130(b)(7).[7] These are distinct responsibilities. *E.g.*, *Wis. Cmty. Servs., Inc. v.*

_____

[7] Movants do not contend that Plaintiffs' proposed modifications would fundamentally alter the nature of Georgia's voting program.

*City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc) (holding that failure to provide a reasonable modification "is an independent basis for liability"); *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (same). As described above, failing to provide equal access to the benefits of each voting mechanism can violate the ADA. And, separately, failing to make reasonable modifications can also violate the ADA.

Under the analytic framework for evaluating a reasonable modification claim, a plaintiff must first show that the requested modification is reasonable. The burden of production for reasonableness is not onerous. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003) (entering judgment in plaintiffs' favor following a bench trial and explaining that a plaintiff's burden in arguing that the requested modification is reasonable is not a "heavy one") (internal quotations omitted); *Merrill*, 491 F. Supp. 3d at 1155 (same). Determining whether a plaintiff's proposed modification is reasonable is "a fact-specific, case-by-case inquiry," *Mary Jo C. v N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013); *Zuckle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1048 (9th Cir. 1999) ("Reasonableness is not a constant . . . what is reasonable in a particular situation may not be reasonable in a different situation.").

Once a plaintiff has met their burden of production, a defendant must show that "making the modification would fundamentally alter the nature of the service,

program, or activity." 28 C.F.R. § 35.130(b)(7)(i); *see also Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 773 (11th Cir. 2020) (describing this analytic framework). If a defendant does not meet this burden, judgment for plaintiffs is appropriate. *E.g.*, *Henrietta D.*, 331 F.3d at 281-82 (entering judgment for plaintiffs where defendants did not offer evidence of fundamental alteration).

## CONCLUSION

The United States respectfully requests that the Court consider the frameworks for evaluating claims to enforce the equal opportunity and reasonable modification requirements of Title II set forth in this Statement.

Dated: January 31, 2024

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney
Northern District of Georgia

AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Dr. S.W.
Atlanta, GA 30303
(404) 581-6000
Aileen.Bell.Hughes@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

JENNIFER MATHIS
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief, Disability Rights Section

ELIZABETH S. WESTFALL
Deputy Chief, Disability Rights Section

s/ *Anna Bobrow*

ANNA BOBROW
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20530

12

anna.bobrow@usdoj.gov

*Attorneys for the United States of America*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: January 31, 2024                    s/ *Anna Bobrow*

ANNA BOBROW

*Attorney for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2024, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: January 31, 2024

<u>s/ *Aileen Bell Hughes*</u>

AILEEN BELL HUGHES

*Attorney for the United States of America*

15